## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**CASE NO.:**

RT RECOVER INNOVATIONS, LTD.,
a foreign corporation AND
RECOVER INNOVATIONS, INC.,

      Plaintiffs,

v.

META PLATFORMS, INC.;
JOSE ARCHILA, an individual;
ADRIAN NAVIA aka RAMON A. NAVIA
ROSALES, an individual; DOMENICO
DI CAMPO FALCHINI, an individual;
ARSENAL PRIME USA; ARMAMENT
PRO; DEFEND AUTHORITY LLC, a
Florida limited liability company;
ECOMMERCE AUTOMATION
AGENCY LLC; PREPCISION LLC;
THE CLUB COMMERCE LLC; THE
ECOMMERCE CLUB LLC;
PILOTNAVIA LLC; USS
LEGENDARY; M&B WORLD
SALES LLC; and JOHN DOES 1-10,
      Defendants.

_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

      Plaintiffs, **RT RECOVER INNOVATIONS, LTD.** and **RECOVER INNOVATIONS, INC.**, by and through their undersigned counsel, hereby bring this Complaint against Defendants, **META PLATFORMS, INC.; JOSE ARCHILA**, an individual; **ADRIAN NAVIA aka RAMON A. NAVIA ROSALES**, an individual; **DOMENICO DI CAMPO FALCHINI**, an individual; **ARSENAL PRIME USA; ARMAMENT PRO; DEFEND AUTHORITY LLC;**

ECOMMERCE AUTOMATION AGENCY LLC; **PREPCISION LLC**; **THE CLUB COMMERCE LLC**; **THE ECOMMERCE CLUB LLC**; **PILOTNAVIA LLC**; **USS LEGENDARY**; **M&B WORLD SALES LLC**; and currently unknown individuals and entities referred to as **JOHN DOES 1-10,** who are advertising, promoting, selling, offering for sale, distributing, and profiting from infringing and confusingly similar, albeit sub-standard, imitations of Plaintiff's goods in violation of Plaintiff's intellectual property rights and to Plaintiff's detriment. In support of its claims, Plaintiff alleges as follows:

## PARTIES

1.      Plaintiff, **RT RECOVER INNOVATIONS, LTD.,** is a foreign corporation with its principal place of business at P.O. Box 8220, Tel Aviv Israel, 6108102.

2.      Plaintiff, **RECOVER INNOVATIONS, INC.,** a United States-based subsidiary of Plaintiff **RT RECOVER INNOVATIONS, LTD.,** is a for-profit corporation organized under the laws of the State of Nevada and is authorized to and does conduct business in the State of Florida and the State of California. Plaintiff **RT RECOVER INNOVATIONS, LTD.** and Plaintiff **RECOVER INNOVATIONS, INC.** are hereinafter referred to collectively as "Recover Tactical" or "Plaintiff."

3.      Defendant, **META PLATFORMS, INC.,** ("Meta") is a Delaware corporation headquartered at 1 Hacker Way, Menlo Park, California 94025, and is authorized to and does conduct business in the State of Florida and the State of California. Meta operates Facebook, Instagram, and a host of internet and/or app-based platforms and services that are known for, among other facilitative services, their use of advanced targeting algorithms to strategically deliver advertisements for a diverse range of products to users, including, but not limited to, users in Florida and California.

4.     To the best of Plaintiff's information, and belief, Defendant, **JOSE ARCHILA** ("Archila"), is and was, at all material times, an individual who resides in Miami-Dade County, Florida and is *sui juris*.

5.     To the best of Plaintiff's information, and belief, Defendant, **ADRIAN NAVIA** aka **RAMON A. NAVIA ROSALES** ("Navia"), is and was, at all material times, an individual who resides in Miami-Dade County, Florida and is *sui juris*.

6.     To the best of Plaintiff's information, and belief, Defendant, **DOMENICO DI CAMPO FALCHINI** ("Falchini"), is and was, at all material times, an individual who resides in Miami-Dade County, Florida and is *sui juris*.

7.     To the best of Plaintiff's information and belief, Defendant, **ARSENAL PRIME USA** ("Arsenal Prime") was or was affiliated with a Florida-based entity that had a website from which it sold, in part, infringing versions of Plaintiff's goods (i.e., that infringed Plaintiff's intellectual property rights) to United States consumers, including, but not limited to, consumers in Florida and California.

8.     To the best of Plaintiff's information and belief, Defendant, **ARMAMENT PRO** ("Armament Pro") is or is affiliated with a Florida-based entity that has a website, https://armamentpro.com, from which it sells, in part, infringing versions of Plaintiff's goods (i.e., that infringe Plaintiff's intellectual property rights) to United States consumers, including, but not limited to, consumers in Florida and California.

9.     To the best of Plaintiff's knowledge, information and belief, Defendant, **DEFEND AUTHORITY LLC** ("Defend Authority") was a Florida limited liability company that had a website from which it sold, in part, infringing versions of Plaintiff's goods (i.e., that infringed Plaintiff's intellectual property rights)  to United States consumers, including, but not limited to,

consumers in Florida and California. Defend Authority filed a notice of voluntary dissolution with the State of Florida on or about October 18, 2024.

10.     To the best of Plaintiff's knowledge, information and belief, Defendant **ECOMMERCE AUTOMATION AGENCY LLC** ("Ecommerce") was a Florida-based limited liability company that had a website from which it sold, in part, infringing versions of Plaintiff's goods (i.e., that infringed Plaintiff's intellectual property rights) to United States consumers, including, but not limited to, consumers in Florida and California. Ecommerce filed a notice of voluntary dissolution with the State of Florida on or about September 22, 2023.

11.     To the best of Plaintiff's information and belief, Defendant **PREPCISION LLC** ("Prepcision") was or was affiliated with a Florida-based entity that had a website from which it sold, in part, infringing versions of Plaintiff's goods (i.e., that infringed Plaintiff's intellectual property rights) to United States consumers, including, but not limited to, consumers in Florida and California.

12.     To the best of Plaintiff's information and belief, Defendant **THE CLUB COMMERCE LLC** ("Club Commerce") was or was affiliated with a Florida-based entity that had a website from which it sold, in part, infringing versions of Plaintiff's goods (i.e., that infringed Plaintiff's intellectual property rights) to United States consumers, including, but not limited to, consumers in Florida and California.

13.     To the best of Plaintiff's knowledge, information and belief, Defendant **THE ECOMMERCE CLUB LLC** ("Ecommerce Club") is a Florida-based limited liability company that has a website from which it sells, in part, infringing versions of Plaintiff's goods (i.e., that infringe Plaintiff's intellectual property rights) to United States consumers, including, but not limited to, consumers in Florida and California.

14. To the best of Plaintiff's knowledge, information and belief, Defendant **PILOTNAVIA LLC** ("Pilotnavia") was a Florida-based limited liability company that had a website from which it sold, in part, infringing versions of Plaintiff's goods (i.e., that infringed Plaintiff's intellectual property rights) to United States consumers, including, but not limited to, consumers in Florida and California. Pilotnavia filed a notice of voluntary dissolution with the State of Florida on or about September 27, 2024.

15. To the best of Plaintiff's information and belief, Defendant **USS LEGENDARY** ("USS Legendary") is or is affiliated with a Florida-based entity that maintains a website, https://usslegendary.com, from which it sells, in part, infringing versions of Plaintiff's goods (i.e., that infringe Plaintiff's intellectual property rights) to United States consumers, including, but not limited to, consumers in Florida and California.

16. To the best of Plaintiff's knowledge, information and belief, Defendant **M&B WORLD SALES LLC** ("M&B") is a Florida-based limited liability company that has a website, from which it sells, in part, infringing versions of Plaintiff's goods (i.e., that infringe Plaintiff's intellectual property rights) to United States consumers, including, but not limited to, consumers in Florida and California.

17. Defendants, **JOHN DOES 1-10**, are currently unknown individuals and/or entities who are believed to be involved in the alleged illegal and infringing operations described in this Complaint either individually or through various currently unknown business entities.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1338 and 15 U.S.C. § 1121 (Lanham Act) and 35 U.S.C. § 271 (Patent Infringement), with supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

19.     Venue is proper in this Court under 28 U.S.C. § 1391(b) as Defendants reside in this District as defined in 28 U.S.C. § 1391(c)(2), avail themselves of the laws of the State of Florida, and purposefully direct their activities toward and conduct business with consumers within the State of Florida and this District. Venue is further proper in this Court under 28 USC 1400(a).

## FACTS

### A.     Recover Tactical's Protected Intellectual Property

20.     Plaintiff Recover Tactical designs, manufactures, and sells high-quality tactical weapon accessories, such as holsters, charging handles, stabilizer kits, grip & rail systems, laser sights, lights, magazine clips, rail adaptors, and rubber grips to law enforcement officers, veterans, outdoor enthusiasts, and any other person(s) or entities who use or are interested in tactical gear.

21.     Since 2013, Recover Tactical has continuously offered its firearms accessories under its "RECOVER TACTICAL®" brand and trademark and, since January 2020, the G7® holster assembly, making up a portion of Recover Tactical's sizeable and unique trade dress, which consumers immediately connect exclusively to Recover Tactical as the source of such products.

22.     Through significant investment of time, money, and effort, Recover Tactical has developed its brand into one of the leading providers of high-quality firearm attachments and other tactical gear in the United States and European Union. Furthermore, Recover Tactical's extensive use and promotion of its unique products' trademarks, trade dress, and utility have brought considerable goodwill and value to Recover Tactical. A critical result of Recover Tactical's efforts and investment is that consumers have come to know, rely upon, and recognize products bearing Recover Tactical's logo and the "RECOVER TACTICAL®" trademark and trade dress.

23.     To protect its brand and to assure customers that they are purchasing its real, high-quality products, Recover Tactical is the owner of numerous registrations with the United States

Patent and Trademark Office ("the USPTO"), which include, but are not limited to: (a) five (5) United States Trademark Registrations (collectively the "Recover Tactical Marks"); and (b) one (1) United States Patent, a utility patent, the infringement of all of which are the subject of this lawsuit (see below). In addition to the Recover Tactical Marks and the referenced patent, Recover Tactical is the owner of a robust portfolio of intellectual property that includes four (4) additional United States Trademark Registrations and ten (10) additional patents granted by the USPTO. Recover Tactical also has five (5) patents granted in various countries worldwide, including a design patent granted in the European Union. Moreover, Recover Tactical has six patents pending with the USPTO as well as four patents pending in various countries worldwide.

24.     Recover Tactical holds a U.S. Trademark Registration for its "RECOVER TACTICAL®" trademark under Registration No. 5,673,461. A true and correct copy of the Registration Information for this Registration is attached hereto as part of **Composite Exhibit A.**

25.     Recover Tactical holds a U.S. Trademark Registration for its "G7®" trademark under Registration No. 7,145,706. A true and correct copy of the Registration Information for this Registration is attached hereto as part of **Composite Exhibit A.**

26.     Recover Tactical holds a U.S. Trademark Registration for its "RC Recover®" trademark under Registration No. 4,609,824. A true and correct copy of the Registration Information for this Registration is attached hereto as part of **Composite Exhibit A.**

27.     Recover Tactical holds a U.S. Trademark Registration for its "Recover®" trademark under Registration No. 4,605,462. A true and correct copy of the Registration Information for this Registration is attached hereto as part of **Composite Exhibit A.**

28.     Recover Tactical holds a U.S. Trademark Registration for its "20/20®" trademark under Registration No. 6,489,630. A true and correct copy of the Registration Information for this Registration is attached hereto as part of **Composite Exhibit A.**

29.     Recover Tactical holds a U.S. utility patent for the G7® holster assembly with the United States Patent and Trademark Office No. 12066271. A copy of the USPTO patent is attached hereto as part of **Composite Exhibit A** (hereinafter, "the Patent").

30.     In addition to holding the Recover Tactical Marks with the USPTO detailed in **Composite Exhibit A**, Recover Tactical has protected trade dress rights, which were established and have been in place since Recover Tactical's inception in 2013.

31.     Recover Tactical's trade dress is inherently distinctive from its competitors and has acquired distinctiveness based on its continued use in commerce by Recover Tactical since 2013. Furthermore, the protected trade dress is non-functional in nature and there is a substantial likelihood of confusion within the general public if infringing products masquerading as Recover Tactical gear are offered, as detailed below.

32.     The commercial success of Recover Tactical's products, as a direct result of their high-quality craftsmanship and skillful promotion, has led to unscrupulous actors copying Recover Tactical's products and offering them for sale on various websites, as described herein.

**B.      The Navia Defendants' Systematic, Long-Term, And Ongoing Infringement Of The Recover Tactical Marks And The Patent**

33.     Starting at least as far back as 2021, Defendants Archila, Navia, and Falchini ("the Navia Individual Defendants") formed a series of entities that advertise, promote, and sell tactical gear products that infringe the Patent, the Recover Tactical Marks, and the Recover Tactical designs, thereby misleading customers into believing they are purchasing authentic Recover Tactical products.

34.     Examples of such entities formed by the Navia Individual Defendants include, but are not limited to, Defendant Arsenal Prime USA, Defendant Armament Pro, Defendant Defend Authority LLC, Defendant Ecommerce Automation Agency LLC, Defendant Prepcision LLC, Defendant The Club Commerce LLC, Defendant The ECommerce Club LLC, Defendant Pilotnavia LLC, Defendant USS Legendary and Defendant M&B World Sales LLC (collectively, "the Navia Corporate Defendants").

35.     Hereinafter, the Navia Individual Defendants and the Navia Corporate Defendants are referred to collectively as "the Navia Defendants."

36.     In 2021, and possibly before, the Navia Individual Defendants created or caused to be created products purposely designed to mimic the Recover Tactical products. The Navia Individual Defendants then created/create various websites through which the Navia Defendants unlawfully advertised/advertise, promoted/promote, and sold/sell their products by, among other things, publishing images and materials on those websites that contain the Recover Tactical Marks (e.g., see armamentpro.com and usslegendary.com).

37.     As to the Navia Defendants' specific infringement of the Recover Tactical Marks and the Patent, the Navia Defendants advertised/advertise, promoted/promote, and sold/sell holsters that replicate the patented utility of Recover Tactical's products and used/use the "RECOVER TACTICAL" logo, font, and color scheme.

38.     There has not been, nor is there currently, any association or agreement between the Plaintiff and the Navia Defendants such that any of the Navia Defendants would be permitted to use any of the Recover Tactical Marks, Plaintiff's trade dress, or the Patent in any manner.

39.     Not only has the Navia Defendants' infringement of Plaintiff's intellectual property caused Plaintiff pecuniary harm, but it has damaged Plaintiff's reputation within the tactical gear

community with customers who have mistakenly purchased the Navia Defendants' infringing products believing they were Plaintiff's products.

40.     As the Plaintiff files this Complaint, there are still posts on the Navia Defendants' Instagram pages that feature photographs of actual Recover Tactical products. As an example, see the screenshot below taken of a post on Defendant Armament Pro's Instagram page on June 22, 2025 that features, without Recover Tactical's permission, an actual Recover Tactical holster. Such posts are intended to and do entice potential Recover Tactical customers to "Order yours NOW!" and purchase products directly from the Navia Defendants. When customers purchase products from the Navia Defendants, there is a "bait and switch" because the Navia Defendants ship products that directly infringe the Patent and the Recover Tactical Marks.



41.     Of the Navia Defendants, in the recent past (as of June 27, 2025), Defendant Armament Pro, and the newest iteration, Defendant USS Legendary, seem to be the largest infringers of the Patent and the Recover Tactical Marks (i.e., most of Meta's and Instagram's "Shop Now" instructions direct customers to Defendant Armament Pro's and/or Defendant USS Legendary's website[s]). As can be seen in the screenshot that appears above after paragraph 40, taken on June 22, 2025 (which appeared on Defendant Armament Pro's Instagram page), there is a clear violation of the Patent and the Recover Tactical Marks (i.e., what is pictured is Recover Tactical's product—see the product's use of Recover Tactical's "RECOVER®" and "G7®" Trademarks—yet Recover Tactical's product and Trademarks are in association with "Armament Pro"). Also see the screenshots after paragraph 51 below, which illustrate targeted ads from Meta leading to Defendant Armament Pro's and Defendant USS Legendary's websites.

42.     It should also be noted that, over the years, the Navia Individual Defendants have used Defendant Arsenal Prime's and Defendant Armament Pro's names interchangeably.

43.     Furthermore, if one searches the customer service telephone number for Defendant Armament Pro on caller identification applications, one comes up with a Defendant Prepcision caller identification. Defendant Prepcision is another store owned by the Navia Individual Defendants that, with the help of Meta, has sold products that infringe the Patent and/or the Recover Tactical Marks.

44.     As a result of the Navia Defendants' aforementioned conduct and actions in infringing, misappropriating, and diluting the Recover Tactical Marks, the Patent, and Plaintiff's protected and registered trade dress, the Plaintiff suffered and continues to suffer substantial damages through loss of sales, reputation, and hard-earned goodwill established through the normal course of its reputable business practices.

45.     Furthermore, Plaintiff has sustained economic damages as a result of the significant and substantial consumer confusion within the marketplace attributable to the Navia Defendants' unlawful activities and practices.

46.     But for the Navia Defendants' fraudulent activities and misrepresentations in selling infringing products that violate the Recover Tactical Marks and the Patent, Plaintiff would have gained substantial and significant profits that Plaintiff, instead, was forced to forfeit.

**C.     Defendant Meta Is Also Actively Engaged In Advertising, Promoting And Selling Products That Infringe The Recover Tactical Marks And The Patent**

47.     Defendant Meta's role in causing harm to Plaintiff is ongoing, deliberate, and technologically sophisticated. Meta operates a robust advertising and sales platform that uses advanced targeting algorithms to deliver ads to purchasing consumers with precision across all of Meta's apps and services, with a projected audience of approximately two-and-a-half (2.5) billion daily active users.

48.     Meta, through its program known as "Lookalike Audiences," collects extensive user data such as likes, follows, comments, browsing history, and/or habits, both on its platforms and on many third-party websites (even when users are not on Meta's platforms). Meta's algorithms analyze such data and create detailed user profiles, which in turn enable Meta to target previously unreached consumers (with similar interests and data profiles) with specific ads with up to ninety percent (90%) accuracy. In other words, the ads are individually targeted to a specific user based on that user's interests, likes, and needs, the ultimate result of which is that more products are visible to consumers who otherwise would not have seen them, and in turn more products are sold through such targeted advertising, including products that routinely violate intellectual property rights as described above.

49.     Using its "Lookalike Audiences" feature, Meta identifies for the Navia Defendants consumers who share characteristics with Recover Tactical's followers, such as interests in tactical gear, law enforcement equipment, and/or outdoor activities, and Meta then delivers unlawful ads selling infringing products directly to those users, the net effect of which is that sales are siphoned from Plaintiff.

50.     Meta is no innocent bystander in these matters, but is rather a willing, active, and intentional participant.  Meta is directly involved in the sale of the Navia Defendants' infringing products.

51.     Meta is not just hosting infringing ads but, along with the Navia Defendants, is actively engaged in the process of selling infringing products by delivering specifically-targeted ads to Plaintiff's carefully identified customers with "Shop Now" instructions (for multiple examples, see the two screenshots below captured on June 27, 2025 – yellow highlights added). Screenshots of some, but certainly not all, additional infringing ads from the Navia Defendants are attached hereto in **Composite Exhibit C**.





52.     To be clear, in the targeted ads shown in the screen shots above, Meta provides a direct call to action for the Plaintiff's customers (i.e., "Shop Now") and provides the user with a direct link to Defendant Arsenal Prime's and Defendant USS Legendary's online stores.

53.     These advertising and product placement structures do not originate with the Navia Defendants; they originate with Meta, whose goal is specifically to place the Navia Defendants' products in front of consumers they otherwise would not reach and to entice consumers to view and purchase the products. Meta's existence relies on successful sales campaigns. In turn, the Navia Defendants' sales rely on successful ad campaigns (i.e., Defendant Meta and the Navia Defendants are reliant on each other).

54.     The Navia Defendants' ads appear to Meta's users in Florida and California (and every other state in the Union) who previously engaged with Recover Tactical's content, such as liking Recover Tactical's page or viewing or purchasing its products, and appear to other users who are interested in tactical gear, demonstrating Meta's precise targeting capabilities.

55.     Furthermore, for every impression (i.e., every time a targeted ad appears), Meta receives revenue.

56.     Meta's creation and use of the proprietary, algorithmically-based, targeted ad process, and its engagement as partners of companies that arise and suddenly disappear, dispel any notion that payment associated with impressions for said targeted ads is not part of the sales process. But for Meta's direct and knowing participation in the sales process, the sales process could and would not exist or occur on the myriad of websites controlled by the Navia Defendants.

57.     Meta does not simply host an uncontrolled marketplace and provide a vacuum in which an advertiser uploads its creative content and hopes for the best; instead, Meta shapes and cultivates the environment to directly facilitate the placement of advertisements to those consumers with the highest likelihood of purchasing the advertised products, enabling its fallacious position that it is merely a "blank slate" platform. Nothing could be further from the truth.

58.     Meta's role in the sales process is a critical one and, in the case of the Navia Defendants, the sales process cannot and does not function without the delivery of targeted, clickable ads delivered by Meta, who has a direct financial interest in placing the ads for the infringing products in front of as many users as possible. Any effort by Meta to deny the existence of such a fraudulent and evident element on its platforms constitutes deliberate and willful avoidance of commonly known - in fact, ubiquitous - information.

59.     The Navia Defendants' entire business model is predicated on the ability to run ads on Meta (through companies and entities that change identities, chameleon-like) with impunity in order to sell infringing products.

60.     But for Meta's actions in incentivizing known, suspected, and/or algorithmically-identified customers of the Plaintiff with targeted ads that contain a specific call to action (i.e., "Shop Now"), the Navia Defendants' sales would never occur.

61.     All of the above, coupled with Meta's knowledge and massive collection of data, makes Meta a direct participant in and directly, or, at the very least, contributorily, liable for any sale of infringing products that occurs, because it indicates clearly and undeniably that fraudulent actors exist and that they even, perhaps, dominate the advertising space on Meta's platforms.

62.     Meta generates revenue every time the targeted ads appear (i.e., for every impression), brilliantly cloaking its revenue-generating efforts by genericizing its model, attempting to distance itself from the finalized sales process – and thereby creating an undeniable red herring of an innocent platform when, in fact, it is a laser-focused sales delivery machine.

63.     More specifically, and to the precise point, Meta is financially involved in, and profiting from, each transaction of selling products that infringe the Recover Tactical Marks and the Patent.

64.     Meta, as a sophisticated, long-term developer and well known industry leader of web-based systems and artificial intelligence, deliberately avoids the use of such systems and intelligence to stop infringers like the Navia Defendants in their tracks, instead choosing to turn a blind eye to the fraudulent enterprises that have led to the widespread infringement of Plaintiff's intellectual property rights in which the Navia Defendants have engaged and continue to engage in order to promote, offer, and sell infringing products on Meta's platforms, all to Meta's monetary gain, and all at Plaintiff's and consumers' victimized expense.

65.     By its actions, Meta is incentivizing and monetizing infringement of Plaintiff's Patent and the Recover Tactical Marks.

66.     Meta is directly profiting from the infringement of the Recover Tactical Marks and the Patent.

67.     A majority of the sales of infringing products by the Navia Defendants are directly and proximately caused by Meta's actions in disseminating the Navia Defendants' ads to algorithmically-chosen consumers/users with the highest likelihood of purchasing the infringing products.

68.     But for Meta's actions and active participation in these matters, the majority of sales of infringing products by the Navia Defendants would not occur.

69.     Meta is an active participant in and primary enabler of the Navia Defendants' infringement of the Patent and the Recover Tactical Marks.

70.     Although Meta has a process through which an affected trademark owner can notify Meta of illicit actors infringing the affected owner's trademarks and copyrights and can use the Meta website to do so, Meta does not have a similar process specifically for patent infringements (i.e., through which an affected patent owner can notify Meta specifically that illicit actors are infringing the affected owner's patents and using the Meta website to do so). This is a form of willful blindness on Meta's part, particularly because Meta had already been made aware by Recover Tactical that the Navia Defendants were infringing other forms of intellectual property (i.e., trademarks and copyrights). At that point, after Meta learned of the infringing and illegal behavior of the Navia Defendants, Meta clearly had a duty to ensure that the products the Navia Defendants were offering on Meta platforms were offered in full compliance with intellectual property law.

71.     Furthermore, Meta has a duty to establish a mechanism for users to report patent infringements as Meta has established for other forms of intellectual property infringement (i.e., trademark and copyright).

72.     Because Meta is one of the largest online platforms, it has a duty to act in a fashion commensurate with the way a reasonable and prudent large online platform provider should act.

73.     Multiple other large online platforms have created processes by which a user can report directly to those platforms about instances of patent infringement.

74.     Therefore, a clear industry standard of care has been established.

75.     Meta, in breach of its duty to its users and the public, has willfully, recklessly and intentionally failed to establish a basic patent infringement reporting process or mechanism.

76.     By failing to create such a process or mechanism, Meta actually encourages and enhances the ability of the Navia Defendants to peddle their illegal and infringing wares to unsuspecting consumers. The Navia Defendants engage in a repetitive process involving countless pop-up websites that Meta clearly supports and has supported over the years. The situation is analogous to a game of "Whac-A-Mole" in that a new website specifically designed to sell infringing goods seemingly appears every day and Meta acts as if each one is legitimate – when every ounce of available evidence clearly indicates otherwise.

### D.     Harm Caused By All The Defendants' Infringing Activities

77.     The harm to Recover Tactical is substantial, ongoing, and multifaceted, particularly in Florida and California, but elsewhere as well.

78.     Recover Tactical has lost, and continues to lose, sales exceeding one-million two-hundred thousand dollars ($1,200,000).

79.     Recover Tactical has sustained substantial and immeasurable harm to its reputation.

80.     Reputational damage attributable to unlawful sales of infringing products threatens Recover Tactical's long-term viability in Florida, California, and elsewhere, not to mention its overall success as a company, because trust is critical in the tactical gear industry.

81.     In Florida and California, where Recover Tactical operates primarily, Defendants' actions not only harm Recover Tactical but also deceive consumers, thereby undermining fair competition in the marketplace.

82.     Defendant Meta and the Navia Defendants are actively promoting, and otherwise advertising, selling, and/or offering for sale substantial quantities of infringing products with the knowledge and intent that such goods will be mistaken for the genuine, high-quality, and unique products sold by Plaintiff, despite Defendants' knowledge that they are without authority to use the Patent and/or the Recover Tactical Marks.

83.     Plaintiff has reported the ongoing infringement of its products to Meta, who has either refused to take down or otherwise delayed in taking down the listings that Plaintiff reported were infringing. A true and correct copy of Plaintiff's most recent take-down notice (dated August 5, 2025) are attached hereto as **Exhibit B**. As of the date of filing of this Complaint, the reported infringing ads remain active across Meta's platforms.

84.     The net effect of the Defendants' actions is consumer confusion beginning at the time of initial interest and continuing through the entire purchase and use process. Consumers are likely to – and in fact do - believe that the Navia Defendants' infringing goods are genuine Recover Tactical products approved for sale by Plaintiff, which is not the case. Defendant USS Legendary has gone so far as to post a YouTube video that was fully-funded and paid for by Recover Tactical on the USS Legendary website without Recover Tactical's permission. The video features a man using Recover Tactical's actual products.  By consumers viewing the video on Defendant USS

Legendary's website (a website that sells infringing knock-offs of Recover Tactical's products), the consumers are intentionally enticed and misled to purchase such infringing products from USS Legendary.

85.     Meta enables and directly and substantially participates in every aspect of the infringement by advertising, promoting, and selling the Navia Defendants' products and providing the Navia Defendants with a platform to target customers and sell the offending goods despite possessing information that infringing goods are regularly peddled on its platforms, including clear and direct evidence of violations of the Recover Tactical Marks and the Patent.

86.     A substantial portion of Defendant Meta's business model is based on profiteering from advertising anchored in its industry-leading algorithms. The algorithms that Meta creates, updates, and employs amplify and enable the advertising of the Navia Defendants. In so amplifying and enabling the advertising of the Navia Defendants, Defendant Meta improperly and unlawfully uses one or more of the Patent and the Recover Tactical Marks flagrantly and without permission and contributes to the Navia Defendants' infringement of Plaintiff's protected intellectual property and Defendant Meta, in fact, itself directly infringes on the Plaintiff's protected intellectual property.

87.     By its actions, Meta knowingly and intentionally contributes to the creation and maintenance of marketplaces that actively promote the sale of illegal and damaging goods alongside the sale of lawful products by legitimate companies, such as the Plaintiff. Consumers rely on the integrity of such platforms to operate in compliance with the law and are unknowingly victimized by such shockingly wrongful and deliberately deceitful behavior by Meta, which behavior is not in the financial interest of Meta to stop.

88.    Defendant Meta and the Navia Defendants are causing individual, concurrent, and indivisible harm to the Plaintiff and the consuming public by: (i) depriving Plaintiff of its right to fairly compete with other legitimate businesses and reducing the visibility of Plaintiff's genuine goods on the World Wide Web and, in turn, in "brick and mortar" retail outlets; (ii) causing an overall degradation of the value of Plaintiff's reputation and goodwill associated with the Patent and the Recover Tactical Marks; and (iii) decreasing Plaintiff's overall sales.

89.    As a result, Defendant Meta and the Navia Defendants are defrauding Plaintiff and the consuming public for Defendants' own benefit.

90.    Upon information and belief, at all times relevant hereto, Defendant Meta and the Navia Defendants had notice of Plaintiff's exclusive rights to the Patent and the Recover Tactical Marks, including, but not limited to, its exclusive rights to use such intellectual property and the goodwill associated therewith.

91.    Defendant Meta's and the Navia Defendants' use of one or more of the Recover Tactical Marks, including, but not limited to, the promotion and advertisement, reproduction, distribution, sale and offering for sale of Defendants' infringing goods, is without Plaintiff's consent or authorization.

92.    Defendant Meta and the Navia Defendants engage in the above-described illegal infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's intellectual property rights for the purpose of profiting on Plaintiff's goodwill and reputation.

93.    Defendant Meta and the Navia Defendants formed and participated in an association-in-fact enterprise, the purpose of which was and is to unlawfully promote, sell, and

profit from versions of Plaintiff's products that infringe the Patent and/or the Recover Tactical Marks.

94.    If Defendant Meta's and the Navia Defendants' intentional infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

95.    Defendant Meta's and the Navia Defendants' infringing activities are likely to cause, and in fact have caused, confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase.

96.    Plaintiff has suffered irreparable injury and substantial damage as a result of all the Defendants' unauthorized and infringing activities and their wrongful use of the Patent and/or the Recover Tactical Marks. The ongoing nature of all Defendants' conduct causes irreparable harm to Recover Tactical's reputation and customer goodwill, as consumers continue to associate the Navia Defendants' defective and inferior products with Recover Tactical's brand, necessitating immediate injunctive relief to stop Defendant Meta from promoting the Navia Defendants' ads and selling infringing products and the Navia Defendants from selling infringing products in violation of Recover Tactical's intellectual property rights.

97.    The harm and damages sustained by Plaintiff have been directly and proximately caused by Defendant Meta's and the Navia Defendants' wrongful reproduction, use, advertisement, promotion, offers, and/or sale of the infringing goods.

98.    All of the Defendants reap the benefits of the sale of goods that infringe the Patent and/or the Recover Tactical Marks.

99.    The Navia Defendants, enabled by Defendant Meta, have sold their infringing products in direct competition with Plaintiff's genuine products.

100.     While Plaintiff's remedies at law may provide partial relief to Plaintiff, those remedies alone would be incapable of providing full relief to Plaintiff, and Plaintiff therefore seeks injunctive relief as well.

101.     All conditions precedent to this action have been performed or otherwise waived.

## CLAIMS

### COUNT I – DIRECT PATENT INFRINGEMENT
### (35 U.S.C. § 271)
**(Against All Defendants)**

102.     Plaintiff restates and realleges the allegations contained in paragraphs 1-101 above as if fully set forth and incorporated herein by reference.

103.     Plaintiff owns the Patent for its G7® holster assembly (hereinafter, the "Holster Assembly"), which is valid, subsisting, and federally registered in the United States (see **Composite Exhibit A**).

104.     The Navia Defendants have directly infringed, and continue to directly infringe, the Patent under 35 U.S.C. § 271 by making, offering to sell, and importing into the United States, without Plaintiff's authorization or license, a holster assembly that violates the Patent.

105.     Defendant Meta has and continues to directly infringe the Patent by offering to sell or by selling the Navia Defendants' infringing goods on Meta's platforms without Plaintiff's authorization or license.

106.     As a result of Defendants' infringement, Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial, including, but not limited to, lost profits, lost sales, lost customers and potential customers, loss of reputation, and a diminished market share.

107.     Defendants' actions have caused and continue to cause Plaintiff to suffer irreparable harm for which there is no adequate remedy at law, and Plaintiff is entitled to an injunction

pursuant to 35 U.S.C. § 283 to prevent the continued violation of Plaintiff's rights secured by the Patent.

108.    Plaintiff respectfully requests injunctive relief and all available statutory damages, including, but not limited to, compensatory damages, reasonable royalties, lost profits, treble damages, attorneys' fees and costs.

### COUNT II – CONTRIBUTORY PATENT INFRINGEMENT
### (35 U.S.C. § 271[c])
### (Against Defendant Meta And/Or John Does 1-10)

109.    Plaintiff restates and realleges the allegations contained in paragraphs 1-101, and 103-107 above as if fully set forth and incorporated herein by reference.

110.    Plaintiff owns the Patent for the Holster Assembly (see **Composite Exhibit A**), which is valid, subsisting, and federally registered in the United States.

111.    Defendant Meta had/has knowledge of the Patent, and of the Navia Defendants' infringement of the Patent.

112.    The infringing Holster Assembly sold/being sold by the Navia Defendants has no other substantial, non-infringing uses.

113.    The infringing Holster Assembly sold/being sold by the Navia Defendants is a material part of the Patent.

114.    Defendant Meta knowingly and intentionally contributed/contributes to the infringement of the Patent by allowing and facilitating the sale of infringing Holster Assemblies by the Navia Defendants on its platforms, which infringing Holster Assemblies directly infringe the Patent.

115.    Defendant Meta acted/acts with the intent to contribute to or induce infringement of the Patent by providing a platform for the Navia Defendants, and by amplifying the Navia

Defendants' advertisements to Plaintiff's customers and potential customers (collectively, "Customers") by using proprietary algorithms.

116.    By failing to take adequate action to prevent the sale of these infringing products, Defendant Meta furthered/furthers the infringement and contributed/contributes to the harm caused to the Plaintiff.

117.    As a result of Defendant Meta's and/or John Does' 1-10 contributory infringement, Plaintiff suffered and continues to suffer damages in an amount to be proven at trial, including, but not limited to, lost profits, lost sales, lost Customers, loss of reputation, and a diminished market share.

118.    Defendant Meta's and/or John Does' 1-10 actions caused and continue to cause Plaintiff to suffer irreparable harm for which there is no adequate remedy at law, and Plaintiff is entitled to an injunction pursuant to 35 U.S.C. § 283 to prevent the continued violation of Plaintiff's rights secured by the Patent.

119.    Plaintiff respectfully requests injunctive relief and all available statutory damages, including, but not limited to, compensatory damages, reasonable royalties, lost profits, treble damages, attorneys' fees and costs.

**COUNT III - INDUCEMENT OF INFRINGEMENT OF PATENT**
**(VIOLATION OF 35 U.S.C. § 271[b])**
**(Against Defendant Meta And/Or John Does 1-10)**

120.    Plaintiff realleges and restates the allegations contained in paragraphs 1-101, 103-107 and 110-118 above as if fully set forth and incorporated herein by reference.

121.    Plaintiff owns the Patent for the Holster Assembly (see **Composite Exhibit A**), which is valid, subsisting, and federally registered in the United States.

122.     Defendant Meta had/has knowledge of the Patent and of the Navia Defendants' infringement of said Patent.

123.     Defendant Meta actively and knowingly encouraged/encourages and aided/aids the infringing acts of the Navia Defendants by amplifying and disseminating the Navia Defendants' advertisements to Customers with the use of proprietary targeting algorithms.

124.     Defendant Meta further actively and knowingly encouraged/encourages and aided/aids in the infringement of the Patent by legitimizing the Navia Defendants' brands, causing Customers to mistakenly believe that the Navia Defendants are selling authentic Recover Tactical products.

125.     As a result of Defendant Meta's and/or John Does' 1-10 inducement of infringement, Plaintiff suffered and continues to suffer damages in an amount to be proven at trial, including, but not limited to, lost profits, lost sales, lost Customers, loss of reputation, and a diminished market share.

126.     Defendant Meta's and/or John Does' 1-10 actions caused and continue to cause Plaintiff to suffer irreparable harm for which there is no adequate remedy at law, and Plaintiff is entitled to an injunction pursuant to 35 U.S.C. § 283 to prevent the continued violation of Plaintiff's rights secured by the Patent.

127.     Plaintiff respectfully requests injunctive relief and all available statutory damages, including, but not limited to, compensatory damages, reasonable royalties, lost profits, treble damages, attorneys' fees and costs.

## COUNT IV– DIRECT TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114)
**(Against All Defendants)**

128.     Plaintiff restates and realleges the allegations contained in paragraphs 1-101 above as if fully set forth and incorporated herein by reference.

129.     Plaintiff is the owner of valid, subsisting, and federally registered trademarks (i.e., the Recover Tactical Marks) (see **Composite Exhibit A)**.

130.     Plaintiff produces, markets, and sells tactical gear that is protected by the Recover Tactical Marks.

131.     Plaintiff has extensively and continuously used the Recover Tactical Marks in interstate commerce in connection with the manufacture, distribution, and sale of high-quality goods, and has developed significant goodwill and brand recognition among consumers.

132.     Starting at least as far back as 2021, the Navia Individual Defendants formed the Navia Corporate Defendants that, at all times material hereto, advertised, promoted, and sold on Meta's platforms tactical gear that infringes the Recover Tactical Marks by using the same or similar marks in commerce without Plaintiff's consent.

133.     The Defendants have, at all times material hereto, used marks that are identical to or confusingly similar to the Recover Tactical Marks (i.e., Plaintiff's registered marks) in connection with the sale, advertising and/or distribution of goods or services on Meta's platforms.

134.     Moreover, the Defendants' use of Meta's platforms to sell, advertise, and distribute such infringing goods caused and causes a likelihood of confusion among consumers and Customers.

135.     The Defendants' unlawful actions have caused and continue to cause unquantifiable damages to Plaintiff and unjustly enrich the Defendants with profits at Plaintiff's expense.

136.     The Defendants' above-described illegal actions constitute infringement of one or more of the Recover Tactical Marks in violation of Plaintiff's rights under the Lanham Act.

137.     Plaintiff and consumers have suffered and will continue to suffer irreparable injury and damages due to the Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined.

138.     Plaintiff respectfully requests injunctive relief, disgorgement of profits by the Defendants, any and all monetary damages proven by Plaintiff, all available statutory damages, and attorneys' fees and costs.

### COUNT V – CONTRIBUTORY TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114)
### (Against Defendant Meta And/Or John Does 1-10)

139.     Plaintiff restates and realleges the allegations contained in paragraphs 1-101, and 129-138 above as if fully set forth and incorporated herein by reference.

140.     The Navia Defendants committed and continue to commit direct trademark infringement of the Recover Tactical Marks by using reproductions, copies or colorable imitations of the Recover Tactical Marks without Plaintiff's consent, and such use by the Navia Defendants was/is likely to cause confusion, mistake, or to deceive consumers and Customers.

141.     Defendant Meta knew or had reason to know or had constructive knowledge that the Navia Defendants were engaging in trademark infringement (i.e., of the Recover Tactical Marks).

142.     Alternatively, after receiving Plaintiff's takedown notices, Defendant Meta should have known of the Navia Defendants' direct infringement of the Recover Tactical Marks, but Defendant Meta willfully blinded/blinds itself to such infringement by its deliberate actions to avoid learning about the Navia Defendants' infringement.

143.    During the relevant time periods herein, Defendant Meta continued/continues to provide services to the Navia Defendants that materially contributed/contribute to the Navia Defendants' (i.e., a known and direct infringer) infringement of the Recover Tactical Marks.

144.    Defendant Meta contributed/contributes to the Navia Defendants' infringement of the Recover Tactical Marks when they provided/provide the means or materials to enable the Navia Defendants to infringe the Recover Tactical Marks because Defendant Meta knew/knows or had/has reason to know that trademark infringement was/is likely to occur.

145.    Defendant Meta profited and profits from its contributory infringement and declined/declines to exercise its obligation to stop or limit the same and, instead, despite having knowledge of such infringement, continued/continues to advertise and to provide the Navia Defendants with access to consumers and Customers via Meta's platforms.

146.    As a result of Defendant Meta's and/or John Does' 1-10 contributory infringement of the Recover Tactical Marks, Recover Tactical has suffered substantial damages, including, but not limited to, lost sales, and reputational harm from complaints about infringing products.

147.    The ongoing nature of Defendant Meta's and/or John Does' 1-10 conduct caused and causes irreparable harm to Recover Tactical's reputation and customer goodwill, as customers continue to associate the Navia Defendants' subpar and defective products with Recover Tactical's brand, necessitating immediate injunctive relief to stop Defendant Meta from promoting the Navia Defendants' ads.

148.    Plaintiff respectfully requests injunctive relief, disgorgement of profits, any and all monetary damages proven by Plaintiff, all available statutory damages, and attorneys' fees and costs.

## COUNT VI: FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125[a])

**(Against All Defendants)**

149.    Plaintiff realleges and restates the allegations contained in paragraphs 1-101 as if fully set forth and incorporated herein by reference.

150.    Upon information and belief, without Plaintiff's permission or license, Defendants widely advertised, offered for sale, sold, and shipped the Navia Defendants' infringing goods bearing one or more of the Recover Tactical Marks throughout the United States.

151.    The Defendants' infringing goods are virtually identical in appearance to Plaintiff's genuine goods.

152.    Defendants' infringing goods and are of a much lower quality than Plaintiff's genuine goods.

153.    The Defendants' infringing offerings and sales constitute unfair competition under federal law because they cause confusion among consumers as to the source of the goods. The infringing products use marks and designs that are identical or confusingly similar to Recover Tactical's, leading customers to believe they are purchasing authentic Recover Tactical gear. Defendants have caused such infringing goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiff's detriment.

154.    For example, the Navia Defendants' infringing holsters feature the "RECOVER TACTICAL" logo in the same font and color scheme as the genuine products, and the packaging for such infringing holsters includes the same design elements as Recover Tactical's authentic products, such as a black background with white text and a tactical gear graphic, each of which deceives consumers and Customers into believing they are purchasing genuine Recover Tactical products.

155.    Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

156.    Plaintiff has no adequate remedy at law and has sustained indivisible injury and damage caused by Defendants' concurrent conduct.

157.     Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

158.    Plaintiff respectfully requests injunctive relief, disgorgement of profits by the Defendants, any and all monetary damages proven by Plaintiff, all available statutory damages, and treble damages.

### COUNT VII: VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (Fla. Stat. § 501.201, et seq.)
**(Against All Defendants)**

159.    Plaintiff realleges and restates the allegations contained in paragraphs 1-101 as if fully set forth and incorporated herein by reference.

160.    Defendants' infringing offerings and sales constitute a deceptive and unfair trade practice under the Florida Deceptive and Unfair Trade Practices Act by misleading Florida consumers and Customers into purchasing infringing products and thereby harming Recover Tactical's business in Florida.

161.    The Defendants' infringing product offerings deceive consumers and Customers into believing they are purchasing authentic Recover Tactical gear.

162.    Meta's technological infrastructure enabled the Defendants to specifically target Florida consumers and Customers with infringing and inferior products. Meta's targeting algorithms deliver and delivered the Defendants' ads to Florida consumers and Customers, as

shown in **Composite Exhibit C**, which displayed the Navia Defendants' infringing holsters with the "RECOVER TACTICAL" logo.

163.    As a result of Defendants' unfair, unlawful, and fraudulent actions, which caused/cause unaware Florida consumers and Customers to purchase the Navia Defendant's infringing goods, Recover Tactical suffered/continues to suffer substantial damages and reputational harm in Florida.

164.    The ongoing nature of Defendants' conduct continues to cause irreparable harm to Recover Tactical's reputation and customer goodwill in Florida, necessitating immediate injunctive relief.

165.    Plaintiff respectfully requests injunctive relief and actual damages plus attorneys' fees and court costs.

<u>COUNT VIII: FRAUD IN VIOLATION OF FLORIDA COMMON LAW</u>
**(Against All Defendants)**

166.    Plaintiff realleges and restates the allegations contained in paragraphs 1-101 as if fully set forth and incorporated herein by reference.

167.    Defendants made and continue to make false statements of material fact to unaware consumers by promoting the Navia Defendants' unlawfully branded goods that infringed/infringe Plaintiff's intellectual property rights.

168.    Defendants were and are well aware that their advertisements were/are in fact false. Furthermore, their false statements were/are designed to and did/do influence consumers and Customers to rely upon such statements to purchase unlawfully branded goods that infringe/infringed Plaintiff's intellectual property rights, believing that the goods were/are, in fact, manufactured by Plaintiff.

169.    Customers and consumers who were and are targeted by the Defendants' fraudulent statements were and are completely unaware of the existence of fraud and, in fact, made and make innocent purchases in reliance upon such fraudulent statements. Such reliance by Customers and consumers was and is completely reasonable under the circumstances, particularly since the fraudulent statements were and are delivered to them via a trusted platform owned by Meta.

170.    By promoting the Navia Defendants' unlawfully branded goods that infringed and infringe Plaintiff's intellectual property rights to unaware consumers and Customers, Defendants intended and intend to induce, and did and do in fact induce, reliance by such consumers and Customers that the goods were and are manufactured by Plaintiff, although they were and are not.

171.    Plaintiff has and continues to be damaged reputationally and monetarily by Defendants' actions.

172.    Plaintiff respectfully requests compensatory damages, treble damages, punitive damages, attorneys' fees and costs, and injunctive relief.

## COUNT IX– FLORIDA CIVIL CONSPIRACY
### (Against All Defendants)

173.    Plaintiff realleges and restates the allegations contained in paragraphs 1-101 as if fully set forth and incorporated herein by reference.

174.    Defendants knowingly agreed/agree to falsely advertise and promote to unaware Florida consumers and Customers for monetary gain the Navia Defendants' unlawfully branded goods that infringed/infringe Plaintiff's intellectual property rights.

175.    The Defendants, by means of direct advertisements on Meta's platforms, regularly offered and continued to offer to unaware Florida consumers the Navia Defendants' unlawfully branded goods that infringed/infringe Plaintiff's intellectual property rights, all in violation of the Florida Deceptive and Unfair Trade Practices Act.

176.     Plaintiff was/is damaged reputationally and monetarily by Defendants' actions because of the poor quality of the Navia Defendants' goods that infringed/infringe Plaintiff's intellectual property rights. Plaintiff lost/loses sales to Defendants as a result of consumers and Customers purchasing the Navia Defendants' goods that infringed/infringe Plaintiff's intellectual property rights.

177.     Plaintiff respectfully requests compensatory damages, treble damages, punitive damages, and injunctive relief.

### COUNT X: VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW
#### (Cal. Bus. & Prof. Code § 17200)
#### (Against All Defendants)

178.     Plaintiff realleges and restates the allegations contained in paragraphs 1-101 as if fully set forth and incorporated herein by reference.

179.     Defendants' infringing offerings and sales constituted/constitute unfair, unlawful, and fraudulent business practices under California's Unfair Competition Law by violating federal intellectual property laws, deceiving California consumers, and causing harm to Recover Tactical's business in California.

180.     The Navia Defendants' infringing products used/use the Recover Tactical Marks and Recover Tactical's designs to mislead consumers into believing they are purchasing authentic Recover Tactical products.

181.     Meta provided and provides the technological infrastructure to target California consumers. Meta's targeting algorithms promoted and promote sales by the Navia Defendants of infringing products to consumers and to Recover Tactical's Customers in California. The infringing ads in **Composite Exhibit C** show the Navia Defendants' ads displayed to users in Los

Angeles and San Diego who had engaged with Recover Tactical's content, such as viewing its product videos on Instagram or searching for "Recover Tactical holsters" on Google.

182.    As a result of Defendants' unfair, unlawful, and fraudulent actions, which caused/cause unaware California consumers and Customers to purchase the Navia Defendant's infringing goods, Recover Tactical suffered substantial damages and reputational harm in California, all to the detriment of the general public.

183.    The ongoing nature of Defendants' conduct caused/continues to cause irreparable harm to Recover Tactical's reputation and customer goodwill in California, necessitating immediate injunctive relief.

184.    Plaintiff respectfully requests injunctive relief, restitution, compensatory damages, and punitive damages.

**COUNT XI: VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW**
**(Cal. Bus. & Prof. Code § 17500)**
**(Against All Defendants)**

185.    Plaintiff realleges and restates the allegations contained in paragraphs 1-101 as if fully set forth and incorporated herein by reference.

186.    Defendants' promotion of the Navia Defendants' infringing products constituted/constitutes false and misleading advertising under California's False Advertising Law by deceiving California consumers into believing they are purchasing authentic Recover Tactical gear. The infringing ads contained in **Composite Exhibit C** demonstrate Meta's platform Facebook promoting the Navia Defendants' infringing gear to consumers and to Recover Tactical's Customers in California. The ads feature a holster with the "RECOVER TACTICAL" logo in the same font and color scheme as Recover Tactical's authentic products, along with a call to action ("Order now, Go to website") that links to the Navia Defendants' online store. The ads were

displayed to users in Los Angeles and San Diego who had previously engaged with Recover Tactical's content, creating a false impression that the products were genuine Recover Tactical gear.

187.    All Defendants had actual knowledge of the deceptive nature of the Navia Defendants' ads. Meta had actual knowledge of the deceptive nature of the Navia Defendants' ads through Recover Tactical's various takedown notices, which included evidence of the Navia Defendants' use of the Recover Tactical Marks and designs to mislead consumers. Meta also has long been aware, through various means, including, but not limited to, public information, complaints, and news reports over many years exposing the fact that infringing goods are regularly sold on many platforms, including Meta's, yet Meta had/has no process in place to verify the integrity of its clients. Meta acted/acts with abandon to disregard such risks in negligent and reckless pursuit of profit. Despite this knowledge, Meta promoted/continues to promote the ads, demonstrating a willful disregard for the truthfulness of the advertising and its impact on California consumers, with a multitude of sales resulting from such false and misleading ads.

188.    As a result of Defendants' unfair, unlawful, and fraudulent actions, which caused/cause unaware California consumers and Customers to purchase the Navia Defendant's infringing goods, Recover Tactical has suffered substantial damages and reputational harm in California.

189.    The ongoing nature of Defendants' conduct caused/continues to cause irreparable harm to Recover Tactical's reputation and customer goodwill in California, necessitating immediate injunctive relief.

190.    Plaintiff respectfully requests injunctive relief, restitution, compensatory damages, attorneys' fees, and disgorgement of ill-gotten gains.

## COUNT XII – FRAUD BY INTENTIONAL MISREPRESENTATION UNDER CALIFORNIA COMMON LAW
### (Against All Defendants)

191.    Plaintiff realleges and restates the allegations contained in paragraphs 1-101 as if fully set forth and incorporated herein by reference.

192.    Defendants knowingly made false statements of material fact to unaware consumers and Customers by promoting the Navia Defendants' unlawfully branded goods that infringed Plaintiff's intellectual property rights.

193.    Defendants were and are well aware that the Navia Defendants' unlawfully branded goods would influence, and have in fact influenced, consumers and Customers to rely upon Defendants' statements to purchase the Navia Defendants' goods, believing that the goods were/are manufactured by Plaintiff.

194.    By promoting the Navia Defendants' unlawfully branded goods that infringed Plaintiff's intellectual property rights to unaware consumers and Customers, Defendants intended to induce reliance by such consumers and Customers that the goods were manufactured by Plaintiff, although they were not.

195.    Because of the convincing nature of the Defendants' fraudulent claims and advertisements, consumers and Customers justifiably believed/believe that the unlawfully branded goods that infringed Plaintiff's intellectual property rights were/are in fact Plaintiff's goods. As a result of such belief, such consumers and Customers made and continue to make purchases of the Navia Defendants' unlawfully branded goods that infringed/infringe Plaintiff's intellectual property rights.

196.    Plaintiff was/continues to be damaged reputationally and monetarily by Defendants' actions because of the poor quality of the Navia Defendants' infringing goods and by

losing sales to the Navia Defendants as a result of consumers and Customers purchasing the Navia Defendants' infringing goods.

197.    Plaintiff respectfully requests injunctive relief, compensatory damages, and punitive damages.

## COUNT XIII – CALIFORNIA CIVIL CONSPIRACY
### (California Civil Code § 1714.10)
#### (Against All Defendants)

198.    Plaintiff realleges and restates the allegations contained in paragraphs 1-101as if fully set forth and incorporated herein by reference.

199.    Defendants knowingly agreed/agree with one another to falsely advertise and promote to unaware consumers and Customers for monetary gain the Navia Defendants' unlawfully branded goods that infringed/infringe Plaintiff's intellectual property rights.

200.    The Defendants intended and intend that the Navia Defendants' unlawfully branded goods that infringed/infringe Plaintiff's intellectual property rights would be, were and are offered for sale to unaware California consumers and Customers, all in violation of California's Unfair Competition Law and California's False Advertising Law.

201.    In furtherance of Defendants' conspiracy, Defendants published and continue to publish to unaware consumers and Customers advertisements containing false and infringing representations, resulting in sales to California consumers and Customers.

202.    Plaintiff was and continues to be damaged reputationally and monetarily by Defendants' actions because of the poor quality of the Navia Defendants' infringing goods and by losing sales to the Navia Defendants as a result of consumers and Customers purchasing the Navia Defendants' infringing goods.

203.    Plaintiff respectfully requests injunctive relief, compensatory damages, and punitive damages.

## COUNT XIV – CIVIL RICO
### (VIOLATION OF 18 U.S.C. §§ 1962[C] AND 1964[C])
### (Against All Defendants)

204.    Plaintiff realleges and restates the allegations contained in paragraphs 1-101 as if fully set forth and incorporated herein by reference.

205.    This claim is brought pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., for damages caused by Defendants' operation and participation in an unlawful enterprise engaged in a pattern of racketeering activity.

206.    Defendants Meta, the Navia Defendants, and John Does 1-10 are each "persons" within the meaning of 18 U.S.C. § 1961(3), as they are capable of holding legal or beneficial interest in property.

207.    Each Defendant has conducted or participated and conducts/participates in the conduct of a racketeering enterprise in violation of 18 U.S.C. § 1962(c).

208.    The Defendants formed and participated and form/participate in an association-in-fact enterprise (the "Infringing Enterprise") within the meaning of 18 U.S.C. § 1961(4). The purpose of the Infringing Enterprise was and is to unlawfully promote, sell, and profit from infringing versions of Plaintiff's products bearing the Recover Tactical Marks and violating the Patent.

209.    The Infringing Enterprise operated and operates through the coordinated and continuous use of digital infrastructure and commercial relationships to: (a) advertise infringing goods on social media; (b) link consumers to infringing listings on the sales websites; (c) obscure

the identity and locations of the sellers of the infringing products; and (d) monetize traffic and sales through advertising revenue and platform and online/digital store fees.

210.    The Infringing Enterprise has engaged and engages in a pattern of racketeering activity as defined in 18 U.S.C. § 1961(5), including multiple, related acts of: (a) wire fraud (18 U.S.C. § 1343); (b) mail fraud (18 U.S.C. § 1341); and (c) trafficking in infringing goods (18 U.S.C. § 2320).

211.    The Defendants engaged in, facilitated, and profited from this pattern of conduct over a substantial period of time, with related and continuous acts, and continue to so engage, facilitate and profit.

212.    The Navia Defendants directly distributed and sold, and continue to directly distribute and sell infringing products that bore and bear the Recover Tactical Marks and violate the Patent. Such acts were and are not authorized or licensed by Plaintiff and were and are designed to confuse and mislead consumers.

213.    Meta was and is not a passive intermediary. Instead, Meta: (a) hosted, promoted, and hosts and promotes infringing content with actual and constructive knowledge of its illegal nature; (b) received specific takedown notices from Plaintiff identifying infringing users and products, but intentionally refused or delayed and continues to refuse or delay enforcement; and (c) profited/profits from sponsored ads and revenue linked to sales of infringing goods and related fraudulent advertisements.

214.    These actions constituted/constitute knowing and active facilitation of trademark and patent infringement in furtherance of the racketeering scheme.

215.    As a direct and proximate result of the acts of racketeering described above, Plaintiff has suffered and continues to suffer at least the following: (a) loss of sales and diverted

revenue; (b) harm to reputation and brand integrity; (c) dilution and devaluation of trademarks and the Patent; and (d) increased enforcement and legal costs.

216.    Plaintiff's injuries are precisely the kind of business/property harms RICO is designed to remedy, and they flow from Defendants' collective racketeering conduct.

217.    Plaintiff respectfully requests injunctive relief and, pursuant to 18 U.S.C. § 1964(c), treble damages, attorneys' fees, and all costs of suit.

## COUNT XV – CIVIL RICO CONSPIRACY
### (VIOLATION OF 18 U.S.C. § 1962[D])
### (Against All Defendants)

218.    Plaintiff realleges and restates the allegations contained in paragraphs 1-101, and 205-216 as if fully set forth and incorporated herein by reference.

219.    Defendants knowingly agreed and conspired, and continue to knowingly agree and conspire, to conduct and participate in the Infringing Enterprise in violation of 18 U.S.C. § 1962(c).

220.    Each Defendant repeatedly and knowingly committed or agreed to facilitate, and continues to knowingly commit or agrees to facilitate, the commission of predicate racketeering acts that constitute a pattern, including, but not limited to, wire fraud, mail fraud, and the trafficking of infringing goods.

221.    As a result of this conspiracy, Plaintiff has suffered the business and property injuries described herein.

222.    Plaintiff respectfully requests injunctive relief and treble damages, attorneys' fees, and all costs of suit.

## COUNT XVI – UNJUST ENRICHMENT
### (Against all Defendants)

223.    Plaintiff realleges and reincorporates the allegations contained in paragraphs 1-101 above as if fully set forth and incorporated herein by reference.

224.     Plaintiff is the owner of the Recover Tactical Marks and the Patent which have been continuously used in commerce and have acquired distinctiveness and goodwill.

225.     As a result of Defendants' unauthorized use of the Recover Tactical Marks and the Patent, Defendants received, and continue to receive benefits, including, but not limited to, profits, increased sales, enhanced reputation and brand legitimacy, all of which rightfully belong to the Plaintiff.

226.     The retention of such benefits by the Defendants, under these circumstances, is unjust and inequitable, as it is derived from the infringement of Plaintiff's intellectual property rights and the wrongful appropriation of Plaintiff's goodwill and reputation.

227.     Plaintiff respectfully requests restitution for the unjust enrichment by Defendants, including, but not limited to, an accounting of sales and profits attributable to the infringement, damages in the amount of sales and profits attributable to the infringement, and any other relief the Court deems just and proper.

## COUNT XVII – NEGLIGENCE
### (Against Defendant Meta And/Or John Does 1-10)

228.     Plaintiff realleges and restates the allegations contained in paragraphs 1-101 above as if fully set forth and incorporated herein by reference.

229.     Defendant Meta has a duty to implement and maintain reasonable measures to protect users' intellectual property and related rights, as described herein, as well as consumers and Customers, on its platforms, and to create a viable reporting system for intellectual property infringement (i.e., both trademark and patent infringement) that allows for effective communication and rectification of such issues.

230.     Defendant Meta has breached this duty by failing to: (a) establish a reporting system for patent infringement claims; (b) act upon reports of trademark and patent infringement; (c)

ensure that businesses act in a lawful manner while using Meta's platforms; (d) take action to remedy situations in which businesses act unlawfully; and (e) warn personal and commercial users of its platforms (including, but not limited to, consumers and Customers) of the dangers and risks associated with such platforms. Meta's negligence involves willful blindness to all of its duties associated with the above-enumerated wrongful acts and omissions.

231.    As a direct and proximate result of Defendant Meta's and/or John Does' 1-10 above-enumerated breaches of duty, Plaintiff has suffered harm, including, but not limited to, loss of revenue, diminished market share, and damage to its reputation.

232.    Plaintiff respectfully requests compensatory damages, attorneys' fees and costs.

## COUNT XVIII – FAILURE TO WARN
### (Against Defendant Meta And/Or John Does 1-10)

233.    Plaintiff realleges and restates the allegations contained in paragraphs 1-101 above as if fully set forth and incorporated herein by reference.

234.    Defendant Meta invited and continues to invite personal and commercial users, including, but not limited to, consumers and Customers to its platforms for the purpose of advertising, selling and/or purchasing goods and services.

235.    Defendant Meta owed and owes such users of its platforms a duty to keep its platforms safe and to warn such users of any known risks and dangers associated with using its platforms.

236.    Defendant Meta breached its duty by failing to warn such users of the infestation of illegal and infringing goods sold on its platforms.

237.    For years, Defendant Meta knew about such infestation and, instead of warning and protecting such users, decided instead to profit from the continued offering for sale and selling of illegal and infringing goods and services.

238.     Defendant Meta breached its duty by failing to warn or adequately alert such users, including, but not limited to, Plaintiff, of the risks associated with Meta's platforms.

239.     Had Defendant Meta provided adequate warnings and instructions, Plaintiff would not have used Meta's platforms, and would not have sustained the injuries set forth herein.

240.     As a direct and proximate result of Defendant Meta's and/or John Does' 1-10 failure to warn Plaintiff as described herein, Plaintiff sustained damages, including, but not limited to, loss of sales, reputation, and hard-earned goodwill established through the normal course of its reputable business practices.

241.     Furthermore, even if Plaintiff never used Defendant Meta's platforms, Plaintiff would still have suffered damages, including, but not limited to, loss of sales, reputation, and hard-earned goodwill established through the normal course of its reputable business practices because, irrespective of Plaintiff's presence on Meta's platforms, Meta has and continues to allow the Navia Defendants to sell and continue to sell illegal goods that infringed/infringe Plaintiff's intellectual property rights on Meta's platforms with impunity.

242.     Plaintiff respectfully requests compensatory damages, attorneys' fees and costs.

## **<u>PRAYER FOR RELIEF</u>**

**WHEREFORE,** Plaintiff demands judgment on all Counts of this Complaint and awards of equitable and monetary relief against the Defendants as enumerated in each of the Counts, which include, but are not limited to, as applicable: (i) injunctive relief; (ii) statutory damages; (iii) treble damages; (iv) royalties; (v) compensatory damages; (vi) punitive damages; (vii) lost profits; (viii) attorneys' fees and costs; and (ix) any and all other relief the Court deems proper and just.

*[Remainder of Page Intentionally Left Blank]*

Respectfully submitted,

STOK KON + BRAVERMAN
Attorneys for Plaintiffs
One East Broward Boulevard
Suite 915
Fort Lauderdale, FL 33301
T: (954)-237-1777
F: (954)-237-1737

By: */s/ Joshua R. Kon*
Joshua R. Kon, Esq.
Florida Bar No. 56147
jkon@stoklaw.com
Samuel J. Levine, Esq.
Florida Bar No. 1025534
slevine@stoklaw.com

WACHTEL COURTNEY LLC
Attorneys for Plaintiffs
6263 Poplar Avenue, Suite 932
Memphis, Tennessee 38119
T: (901) 229-7828

By: */s/ Jonathan Wachtel*
Jonathan Wachtel
Tennessee Bar No. 015904
jw@wwcfirm.com
*Pro Hac Vice Admission Pending*
Thomas E. Courtney Jr.
Tennessee Bar No. 019904
tc@wwcfirm.com
*Pro Hac Vice Admission Pending*
Benjamin I. Wachtel
Tennessee Bar No. 037986
bw@wwcfirm.com
*Pro Hac Vice Admission Pending*